# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DALE LESTER MORRIS,

        Defendant-Appellant.

UNPUBLISHED
June 21, 2018

No. 333468
Washtenaw Circuit Court
LC Nos. 15-001036-FC and
           15-001037-FC

Before: CAMERON, P.J., and METER and BORRELLO, JJ.

PER CURIAM.

Defendant was convicted following a bench trial of two counts of bank robbery in violation of MCL 750.531. The trial court sentenced defendant to two concurrent terms of 71 months to 30 years' imprisonment. Defendant now appeals as of right. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On the morning of July 8, 2015, defendant entered the Bank of Ann Arbor in Ypsilanti, Michigan and handed a teller a note demanding money. Defendant wore a black suit, a fedora, a bandana around his neck, and tinted glasses. Defendant threatened the teller and ordered her to not give him the money in bundles. The teller complied and gave him $1,077. Defendant left the bank and fled in a car that the police later traced to his girlfriend. The bank's surveillance cameras recorded the robbery inside the bank, and surveillance cameras at the adjacent City Hall building recorded his arrival and getaway.

The next day, on July 9, 2015, defendant entered the Eastern Michigan University Credit Union in Ypsilanti, interrupted a teller assisting a customer, and gave the teller a note demanding money. The note read, "Give me all your money. No dye pack." Defendant wore nylons over his face and a hat. Both the teller and the customer testified at trial that they could see through the nylon material and could see defendant's face. Defendant told the teller to give him one hundred dollar bills and then ordered her to give him all of the money she had. She complied and gave him $6,000. Defendant fled the scene. The robbery was recorded on the credit union's surveillance cameras.

The police investigated the robberies by reviewing the surveillance videos, interviewing the witnesses, and circulating to other law enforcement agencies still photos of defendant that

were reproduced from the surveillance camera footage of the robberies. The Bank of Ann Arbor teller identified defendant from a photo array as the person who robbed the bank. The credit union teller and customer both identified defendant from a photo array as the robber of the Eastern Michigan University Credit Union. Defendant evaded capture, but a United States Marshall eventually arrested defendant outside the state of Michigan on a bank robbery warrant issued by the Washtenaw County Prosecutor's Office. Defendant was extradited to Michigan.

On September 9, 2015, in the district court, defendant was arraigned on the warrant for the Bank of Ann Arbor robbery. The magistrate informed defendant that a felony complaint had been issued accusing him of committing a bank robbery on July 8, 2015, at 7 West Michigan Avenue in the City of Ypsilanti, Michigan. Specifically, the magistrate stated that defendant was accused of intending to commit the crime of larceny in a bank and putting the teller in fear for the purpose of stealing money from the bank. Defendant was informed that this was a felony charge with a maximum penalty of life in prison. The magistrate asked defendant if he understood the charge, and defendant responded affirmatively. After the magistrate read the contents of the warrant on the record, defendant objected to the warrant and the information contained in it as follows:

> *The Defendant*: Yeah, I just want it for the record that I object to this.
>
> *The Court*: Of course, a not guilty plea has been entered.
>
> *The Defendant*: Yeah, I object to the warrant and it's [sic] information, I want that on record.
>
> *The Court*: Okay, it's on record.
>
> *The Defendant*: Okay let's proceed.

Additionally, the magistrate informed defendant that he had a right to remain silent, that anything he said at the proceeding could be used against him at a later proceeding, that he had a right to be represented by an attorney, and that he had a right to have an attorney appointed to him by the court if he could not afford one. The magistrate asked defendant if he needed an attorney to be appointed, and defendant indicated that he needed a court-appointed attorney. After inquiring about defendant's financial status, the magistrate indicated that an attorney would be appointed to represent defendant. Defendant reiterated that he objected to the warrant and complaint, and the magistrate responded, "That's right, it is noted on the record."

At a subsequent proceeding on October 1, 2015, defendant was arraigned in the district court on the warrant for the Eastern Michigan University Credit Union robbery. Defendant was represented by appointed counsel at this proceeding. The judge indicated that defendant was being charged with committing a robbery at a credit union or bank located at 761 Jenness Street in the City of Ypsilanti for the purpose of stealing money. Defendant was informed that this was a felony offense that was punishable by life in prison or any term of years. The magistrate further informed defendant that he had the right to be represented by an attorney and that one could be appointed for him. After discussions with defendant, the judge indicated that an attorney would be appointed for defendant on the second bank robbery charge as well.

Defendant pleaded not guilty. The second bank robbery charge was assigned a separate case number.

On October 8, 2015, a hearing was held that had been scheduled as both a preliminary examination for the first robbery charge and a probable cause hearing for the second robbery charge. At the outset, defendant's appointed counsel indicated that defendant had expressed his desire to represent himself and that defense counsel had filed a motion to withdraw. When the judge asked defendant if he wished to represent himself in the matter, defendant responded, "Yes." Defendant further indicated, "I'd like to represent myself as my constitutional right."

The district court judge then proceeded to advise defendant of his rights regarding a waiver of the right to counsel, as set forth in MCR 6.005(D). The judge asked defendant again whether he wished to have appointed counsel represent him and whether defendant wished to represent himself. Defendant affirmatively indicated that he did not want to be represented by appointed counsel and that he wanted to represent himself. The judge asked defendant if he understood that he had been charged with bank robbery in each case, that these charges were felonies, and that they were punishable by life or any term of years. Defendant responded affirmatively that he understood each of these facts. The judge asked defendant if he wanted to be represented by appointed or retained counsel, understanding the charges and penalties involved. Defendant indicated that he did not want to be represented by counsel. The judge further informed defendant that he could ask the court to be represented by counsel at any time during the proceedings if he decided that he wanted counsel. Defendant indicated that he understood this. Additionally, the judge advised defendant that "by representing yourself, there can be certain issues involved," that defendant would be held to an understanding of the law and court procedure just as the prosecution would be, and that defendant would not receive favorable treatment. Defendant indicated his understanding. Finally, the judge asked defendant if he had any questions regarding his self-representation, and defendant indicated that he did not. The judge determined that defendant would be permitted to represent himself based on the inquiry conducted with defendant. The judge also appointed standby counsel for defendant to assist in filing documents and answering any of defendant's procedural or substantive questions.

At the same hearing, the district court subsequently accepted a motion to dismiss filed by defendant in both cases. The district court adjourned both preliminary examinations to a later date in order to allow for a response to defendant's motions by the prosecution and for the district court to address the motions at a hearing before holding the preliminary examinations.

A probable cause conference was held on November 5, 2015. As the judge was advising defendant of his rights with respect to his assertion of his right to self-representation, defendant objected to the continuing availability of standby counsel. The judge confirmed with defendant that it was defendant's desire to no longer have standby counsel and then granted his request. After being advised of the risks of self-representation, defendant confirmed that he wanted to continue representing himself.

The preliminary examinations for both bank robbery charges were conducted on November 12, 2015. The proceedings began with the preliminary examination for the Bank of Ann Arbor robbery. At the outset, the district court judge confirmed with defendant that he wished to continue representing himself as follows:

*The Court*: And Mr. Morris, you are wishing to represent yourself and you do not want—

*The Defendant*: I am representing myself—

*The Court*: —You do not want appointed counsel?  I just want to make that clear for the record—

*The Defendant*: Your Honor, I have been through this several times.

*The Court*: All right.  And you want to continue representing yourself?  All right.

*The Defendant*: Yes sir.

The judge also advised defendant again of the potential penalties associated with the charged offense, and defendant indicated that he understood the serious nature of the charge. Defendant then launched into a drawn-out argument about why the district court lacked subject-matter jurisdiction.  The district court had already denied motions to dismiss for lack of jurisdiction made by defendant at two previous hearings.  Nonetheless, the judge allowed defendant to ramble on at the beginning of the November 12 proceeding.  Defendant asserted that he could file a lawsuit against the judge. Defendant concluded, "I don't have nothing else to say about this case.  Police, take me out of here."  The judge ordered defendant to sit down. Defendant refused to comply, and he then argued with the judge.  The judge warned defendant that he would be held in contempt if he continued his course of conduct.  Defendant stated, "There is nothing to talk about.  I'm ready to leave."  The judge informed defendant that if he left the courtroom, he would voluntarily forfeit his right to be present at the hearing.  Defendant continued to argue with the judge, and he was held in contempt.  The following exchange occurred:

*The Court*: Do you understand that if you continue to talk and you don't hold yourself in the proper decorum of this court, I will have you removed and you are violating your right to be present at this hearing[?]  And this hearing will continue without you—

*The Defendant*: All I'm—

*The Court*: You may remain in the courtroom—

*The Defendant*: —All I'm saying is why—

*The Court*: —But, if you continue to talk, you will be gagged—

Defendant continued to argue with the judge.  The judge denied defendant's challenge to the court's subject-matter jurisdiction and then asked defendant if he wished to remain in the courtroom, provided that he would follow the instructions and decorum of the court.  The following exchange occurred at the conclusion of the judge's explanation:

*The Court*: If you don't want to be gagged and you refuse to stop talking when I tell you to stop, you will be removed and then you will be forfeiting your right to be in this courtroom during this hearing. But, this hearing will be conducted without you.

So, you have to tell me how you want to proceed.

*The Defendant*: Okay. I—I believe I'm ready to go. And you—You all can conduct this hearing without me.

*The Court*: All right—

*The Defendant*: Okay—

*The Court*: —Please remove the Defendant.

After defendant was removed from the courtroom, the preliminary examination continued with the prosecution calling the Bank of Ann Arbor teller to testify. The district court judge determined that defendant would be bound over to the circuit court. The judge then asked to have defendant brought back to the courtroom to conduct the arraignment on the information and to "see if he wants to be present for that." The judge was subsequently informed that defendant was resisting Michigan Department of Corrections (MDOC) officers. On the record, the judge questioned an MDOC officer who was involved. The MDOC officer indicated that defendant was placed in lockup after he requested to leave the courtroom and that defendant refused to come back to the courtroom after the judge's request. The MDOC officer further indicated that he would potentially have to physically fight defendant to bring him to the courtroom and that this would pose a security risk. The judge found that defendant voluntarily rejected his opportunity to return to the courtroom to participate in the proceedings and that defendant would not be ordered to return to the courtroom because doing so would create a potential security risk. A plea standing defendant mute to the charge was entered. The prosecutor indicated that as far as he knew, defendant had received the discovery packet and that a copy of the information was typically included in the discovery packet.

The November 12, 2015 proceedings continued with the preliminary examination for the Eastern Michigan University Credit Union robbery. The judge indicated that defendant had forfeited his right to be present in the matter through his previous conduct during the proceedings that day, specifically noting that defendant had voluntarily removed himself from the hearing and had refused to return for the arraignment process. The prosecutor further stated that he had also asked the MDOC officer to ask defendant again whether he wanted to participate in the second preliminary examination. Defendant refused to participate. The preliminary examination was conducted without defendant in the courtroom, and the district court judge determined that defendant would also be bound over to the circuit court on the second bank robbery charge. The prosecutor affirmatively indicated that defendant had been provided with a discovery packet and that the standard discovery packet always includes a copy of the information. The judge determined that defendant would not be forced to return to the courtroom for an arraignment for the same reasons he was not ordered to return for an arraignment on the first charge. A plea standing defendant mute to the second charge was entered.

The two bank robbery cases were joined for trial. During the course of addressing preliminary matters on the first day of trial and before any potential jurors were brought into the courtroom for voir dire, defendant asserted that he wanted a bench trial. Defendant was sworn in, and the trial court proceeded to conduct a colloquy with defendant. The trial court again advised defendant of the nature of the two bank robbery charges and the potential penalties if convicted of those offenses. The trial court also advised defendant that he had a constitutional right to a jury trial, and defendant affirmatively indicated that he understood that he had this right. The trial court further asked defendant if he understood that by giving up his right to a jury trial, the matter would proceed that morning to a bench trial. Defendant indicated that he understood. The trial court asked defendant if he was voluntarily giving up this constitutional right, and defendant responded affirmatively. Additionally, the trial court confirmed for a second time at that proceeding that defendant was knowingly choosing to represent himself. After taking advantage of the opportunity to consult with appointed standby counsel, the trial court asked defendant how he wished to proceed. Defendant again confirmed that he was waiving his constitutional right to a jury trial. Both defendant and the prosecution signed a waiver of trial by jury form. The trial court found that defendant had been properly advised of his right to a jury trial, had been given an opportunity to consult with counsel, and had executed a valid waiver in open court of his right to a jury trial. The trial court approved defendant's request and signed the waiver form. Following the bench trial, the trial court found defendant guilty of both bank robberies. This appeal ensued.

## II. ANALYSIS

### A. WAIVER OF RIGHT TO COUNSEL AT NOVEMBER 12, 2015 PROCEEDINGS

Defendant first argues that the district court violated the requirements of *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), and MCR 6.005(D) and (E) by failing to obtain a valid waiver from defendant of his right to counsel at the proceedings on November 12, 2015. Defendant argues that both the preliminary examination and the arraignment on the information are critical stages where a defendant has a right to counsel. With respect to the arraignments on the informations specifically, defendant argues that the district court violated MCR 6.005(E) because he was never asked whether he was waiving his right to counsel for purposes of those proceedings or whether he desired standby counsel. Finally, defendant argues that a structural error requiring automatic reversal occurred because he was denied counsel during the preliminary examinations. Defendant also raises essentially the same arguments in his Standard 4 brief. Defendant additionally argues that the district court erred by failing to provide him with appointed standby counsel for the November 12, 2015 proceedings and that he never waived his right to standby counsel.

Defendant did not raise these arguments below. In fact, defendant asserted numerous times throughout the proceedings that he wanted to represent himself and continue without representation by an attorney. Therefore, these arguments are unpreserved. *People v Campbell*, 316 Mich App 279, 283; 894 NW2d 72 (2016).

Our Supreme Court has set forth the standard of review that is ordinarily applicable to appellate challenges to the validity of a defendant's waiver of the Sixth Amendment right to counsel:

We review for clear error the trial court's factual findings surrounding a defendant's waiver. However, to the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo. [*People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004).]

Nonetheless, we review unpreserved claims of constitutional error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). On plain-error review, the defendant has the burden to show (1) "error"; (2) that was "plain," meaning "clear or obvious"; (3) and that affected substantial rights or caused prejudice, meaning "that the error affected the outcome of the lower court proceedings." *Id*. at 763. "[O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse," but "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted; last alteration in original).

"The Sixth Amendment safeguards the right to counsel at all critical stages of the criminal process for an accused who faces incarceration." *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004), citing *Maine v Moulton*, 474 US 159, 170; 106 S Ct 477; 88 L Ed 2d 481 (1985); see also US Const, Am VI. The right to counsel protected by the Sixth Amendment "is applicable to the states through the Due Process Clause of the Fourteenth Amendment." *Williams*, 470 Mich at 641, citing *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963). The Michigan Constitution also protects the right to counsel in criminal prosecutions. Const 1963, art 1, § 20. The United States Supreme Court has described " 'critical' stages" of criminal proceedings as those " 'where the results might well settle the accused's fate and reduce the trial itself to a mere formality,' " *Moulton*, 474 US at 170; 106 S Ct 477, 484; 88 L Ed 2d 481 (1985) (citation omitted), or where "[a]vailable defenses may be as irretrievably lost, if not then and there asserted," *Hamilton v Alabama*, 368 US 52, 54; 82 S Ct 157; 7 L Ed 2d 114 (1961).

The Sixth and Fourteenth Amendments also protect the right of self-representation for an accused in a criminal proceeding. *Faretta v California*, 422 US 806, 818-821; 95 S Ct 2525; 45 L Ed 2d 562 (1975). In *Faretta*, 422 US at 807, the United States Supreme Court held that "a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." Accordingly, the constitutionally protected right to counsel may be waived if the waiver is made knowingly, voluntarily, and intelligently. *Id*. at 835; see also *Iowa v Tovar*, 541 US 77, 87-88; 124 S Ct 1379; 158 L Ed 2d 209 (2004). "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 US at 835 (quotation marks and citation omitted).

Furthermore, the right of self-representation is also protected under Michigan law, both by the Michigan Constitution and by statute. Const 1963, art 1, § 13; MCL 763.1; see also *Williams*, 470 Mich at 642. In *Anderson*, 398 Mich at 367-368, our Supreme Court set forth

three requirements that must be met before a trial court may grant a defendant's request to assert the right to self-representation and waive the right to counsel: (1) "the request must be unequivocal"; (2) "trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily"; and (3) "the trial judge [must] determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." With respect to the finding that the waiver is knowingly, intelligently, and voluntarily made, "[t]he trial court must make the Pro se defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id*. at 368.

In addition to the *Anderson* three-part inquiry, the trial court must also satisfy the requirements in MCR 6.005 regarding requests by a defendant to waive the right to counsel and assert the right to self-representation. *People v Adkins (After Remand)*, 452 Mich 702, 722; 551 NW2d 108 (1996), overruled in part on other grounds by *Williams*, 470 Mich at 641 n 7.[1] The pertinent provisions in MCR 6.005 are as follows:

> (A) Advice of Right. At the arraignment on the warrant or complaint, the court must advise the defendant
>
> (1) of entitlement to a lawyer's assistance at all subsequent court proceedings, and
>
> (2) that the court will appoint a lawyer at public expense if the defendant wants one and is financially unable to retain one.
>
> The court must question the defendant to determine whether the defendant wants a lawyer and, if so, whether the defendant is financially unable to retain one.
>
> * * *
>
> (D) Appointment or Waiver of a Lawyer. If the court determines that the defendant is financially unable to retain a lawyer, it must promptly appoint a lawyer and promptly notify the lawyer of the appointment. The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

---

[1] In *Williams*, 470 Mich at 641 n 7, our Supreme Court stated that the decision in *Adkins* was erroneous only "to the extent that *People v Adkins (After Remand)*, 452 Mich 702, 721 n 16; 551 NW2d 108 (1996), can be read to say that trial court decisions regarding Sixth Amendment waivers are only reviewed for abuse of discretion."

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

(E) Advice at Subsequent Proceedings. If a defendant has waived the assistance of a lawyer, the record of each subsequent proceeding (e.g., preliminary examination, arraignment, proceedings leading to possible revocation of youthful trainee status, hearings, trial or sentencing) need show only that the court advised the defendant of the continuing right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right. Before the court begins such proceedings,

(1) the defendant must reaffirm that a lawyer's assistance is not wanted; or

(2) if the defendant requests a lawyer and is financially unable to retain one, the court must appoint one; or

(3) if the defendant wants to retain a lawyer and has the financial ability to do so, the court must allow the defendant a reasonable opportunity to retain one.

The court may refuse to adjourn a proceeding to appoint counsel or allow a defendant to retain counsel if an adjournment would significantly prejudice the prosecution, and the defendant has not been reasonably diligent in seeking counsel.

In *Adkins*, our Supreme Court held that substantial compliance is the standard by which to evaluate a trial court's decision to grant a defendant's request for self-representation:

We hold, therefore, that trial courts must substantially comply with the aforementioned substantive requirements set forth in both *Anderson* and MCR 6.005(D). Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures. The nonformalistic nature of a substantial compliance rule affords the protection of a strict compliance rule with far less of the problems associated with requiring courts to engage in a word-for-word litany approach. Further, we believe this standard protects the "vital constitutional rights involved while avoiding the unjustified manipulation which can otherwise throw a real but unnecessary burden on the criminal justice system." [*Adkins*, 452 Mich at 726-727 (citation omitted).]

Noting the "unavoidable tension created between two constitutional rights when a defendant chooses self-representation," our Supreme Court has stated that "a defendant has either a right to counsel or a right to proceed in propria persona, but not both." *Id*. at 720. "The defendant must exhibit an intentional relinquishment or abandonment of the right to counsel, and the court should indulge every reasonable presumption against waiver of that right." *Id*. at 721, quoting *Johnson v Zerbst*, 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938) (internal quotation marks omitted). "The record must show, or there must be an allegation and evidence

-9-

which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." *Adkins*, 452 Mich at 721 (quotation marks and citation omitted). But the *Adkins* Court also recognized "the potential for savvy defendants to use these competing rights as a means of securing an appellate parachute." *Id*. at 724. "To permit a defendant in a criminal case to indulge in the charade of insisting on a right to act as his own attorney and then on appeal to use the very permission to defend himself in pro per as a basis for reversal of conviction and a grant of another trial is to make a mockery of the criminal justice system and the constitutional rights sought to be protected. We would not permit it." *Id*. at 725 (quotation marks and citation omitted).

In this case, the district court complied with MCR 6.005. At both arraignments on the warrants in each of the respective bank robbery charges, defendant was informed of his right to be represented by counsel and his right to have an attorney appointed to him if he could not afford one. Thus, MCR 6.005(A) was satisfied. Counsel was appointed for defendant.

Next, the district court followed MCR 6.005(D) in obtaining a waiver of his right to counsel from defendant at the October 8, 2015 hearing. The district court judge advised defendant that he had been charged with two bank robberies, that these were felony offenses, and that they were punishable by life or any term of years. The judge further informed defendant that if he chose to represent himself, he would be held to the same understanding of the law as the prosecutor and would not receive favorable treatment. Defendant indicated that he understood each of the judge's explanations, and he affirmatively expressed his desire to represent himself and to not be represented by appointed counsel. The judge also informed defendant that he could still request to be represented by counsel at any time during the proceedings. Accordingly, defendant was made aware of the nature of the charges, the applicable potential penalties (including the maximum possible sentence of life in prison), and the risk involved in self-representation. Defendant also had the opportunity to consult with his appointed counsel, who was present at the October 8, 2015 hearing and indicated at the beginning of the hearing that she had spoken with defendant and had been told that he wished to discharge appointed counsel in order to represent himself. After the judge conducted the previously described inquiry with defendant on the record, the judge permitted defendant to represent himself. Thus, MCR 6.005(D) was also satisfied.

Defendant's appellate arguments focus on the November 12, 2015 proceedings, which included the preliminary examinations and arraignments on the informations for both charges. At the November 12, 2015 proceedings, the district court only had to follow subrule (E), which pertains to "Advice at Subsequent Proceedings," because an initial waiver had already been obtained under subrule (D) at the October 8, 2015 hearing. MCR 6.005(E); see also *Adkins*, 452 Mich at 723 n 21. At the beginning of the November 12, 2015 proceeding, the judge asked defendant if he still wanted to represent himself and if he wanted appointed counsel. Defendant reaffirmed that he did not desire the assistance of counsel by replying that he still wanted to represent himself and that he had "been through this several times." The colloquy satisfied the requirements of MCR 6.005(E).

Subsequently, defendant was removed from the courtroom after defiantly arguing with the judge and requesting to be removed from the proceedings. The preliminary examinations and arraignments were then conducted consecutively in essentially one proceeding.[2] The arraignment on the information may be conducted by a district court judge immediately following the bindover of a defendant to circuit court. MCR 6.111. Defendant has cited no authority in support of his argument that the district court was required to confirm *again* with defendant between portions of the same proceeding that he still wished to represent himself. As our Supreme Court has stated, "[t]he comments to MCR 6.005 indicate that this Court does not desire or expect that a trial court will repeat the inquiry required at the initial waiver of counsel procedure unless the judge believes the particular circumstances warrant such an inquiry." *Adkins*, 452 Mich at 723 n 21. Furthermore, in *People v Suggs*, the companion case in *Adkins*, our Supreme Court concluded that "[t]he fact that the judge did not have the defendant reaffirm his right to counsel before sentencing is not enough to defeat a finding of substantial compliance with the waiver of counsel procedures in this case." *Id*. at 736.

In this case, considering the fact that defendant refused to participate in the November 12, 2015 proceedings after leaving the courtroom and despite being given multiple opportunities to return, it does not appear to us that further inquiry about defendant's desire to represent himself was warranted after the district court had already complied with MCR 6.005(E) that day. *Id*. at 723 n 21, 736. To the extent that the proceedings of November 12, 2015, could be considered divisible into separate proceedings, the fact that defendant did not reaffirm his waiver in between each stage does not negate the district court's substantial compliance with MCR 6.005(E). See *id*. at 736. Moreover, defendant's persistent refusal to participate in any form in the November 12, 2015 proceedings operated as a forfeiture of his right to counsel without the necessity of obtaining a formal reaffirmance on the record of his waiver of that right. Cf. *People v Kammeraad*, 307 Mich App 98, 100; 858 NW2d 490 (2014) (holding that a defendant "forfeited his constitutional rights to counsel, self-representation, and to be present in the courtroom during his trial, given the severity of his misconduct and his absolute refusal to participate in any manner in the proceedings").

Next, there is no merit to defendant's argument that the district court violated subrule (E) by not asking if he desired standby counsel for the arraignment on the information. There is no such requirement in MCR 6.005(E). Moreover, there is no requirement that standby counsel be appointed for a defendant who asserts the right to self-representation; a defendant does not have the right to both represent himself and be assisted by counsel. *Adkins*, 452 Mich at 720; see also *People v Dennany*, 445 Mich 412, 443; 519 NW2d 128 (1994) (opinion by GRIFFIN, J.) ("We conclude that [Const 1963,] art 1, § 13 permits the use of standby counsel as a matter of grace,

___

[2] There are two separate transcripts for the November 12, 2015 proceedings: one for the preliminary examination and arraignment on the information in the first bank robbery case, and one for the preliminary examination and arraignment on the information in the second bank robbery case. However, the transcripts indicate that the proceedings in the second case were commenced four minutes after the proceedings in the first case were concluded. It goes without saying that it is common to take short breaks during a single court proceeding.

but not as a matter of right."). Defendant's argument also ignores the fact that he had previously been appointed standby counsel but rejected the continued participation of standby counsel at the November 5, 2015 hearing. The judge granted defendant's request to dismiss standby counsel.[3]

Turning to the *Anderson* three-part test, we note that in accepting defendant's initial waiver of his right to counsel, the district court judge never referenced this test, nor did the judge make explicit findings directed at the three prongs. Nonetheless, for the reasons that follow, we conclude that the district court judge's inquiry under MCR 6.005(D) also substantially complied with the substantive requirements of the *Anderson* test, thus satisfying the standard of substantial compliance required under *Adkins*.

In reaching this conclusion, we find our Supreme Court's analysis in *Suggs* to be instructive. In *Suggs*, the trial court engaged in a colloquy with the defendant before permitting the defendant to represent himself. *Adkins*, 452 Mich at 716-718. However, the trial court did not state its reasons for finding that the defendant made a proper waiver of his right to counsel. *Id*. at 735. Nonetheless, our Supreme Court concluded that "in light of both the defendant's eagerness to proceed with his case as a tactical decision and the thorough judicial compliance with the other procedures, the judge's oversight in this matter is also not enough to defeat a finding of substantial compliance with the waiver of counsel procedures in this case." *Id*. Our Supreme Court reviewed the record of the discussion between the trial court and the defendant, concluding that the record demonstrated an unequivocal request by the defendant to represent himself, that the record established a knowing and voluntary waiver because the trial court advised the defendant of his lack of legal knowledge and the inherent dangers of self-representation, and that the record showed that the trial court inquired into the defendant's ability to comply with courtroom procedures and protocol. *Id*. at 732-735. Our Supreme Court determined that the trial court substantially complied with the requirements set forth in *Anderson* and MCR 6.005 "because the judge conveyed the substance of both *Anderson* and the court rule to the defendant" and "the defendant understood these concepts and made the decision to proceed in propria persona unequivocally and with his eyes open." *Id*. at 736.

In this case, the record demonstrates that defendant's October 8, 2015 waiver of his right to counsel was valid. First, defendant unequivocally requested to represent himself. He stated on more than one occasion that he wanted to exercise his constitutional right to represent himself, and he also responded by saying "Yes" when the judge asked him if he wanted to represent himself. The judge also specifically asked defendant again if he wanted to be represented by counsel after the judge explained the charges and penalties involved, and defendant responded that he did not want to be represented.

Next, the judge advised defendant of the nature of the charges, the potential penalties, and that he could subsequently request to be represented by counsel at any point during the proceedings if he wanted counsel. The following exchange also occurred:

---

[3] Defendant had the assistance of appointed standby counsel during his trial.

*The Court*: Okay. Now sir, you understand also, that by representing yourself, there can be certain issues involved in that? And that means that the Court is not going to treat you any favorably [sic] because you are not represented by counsel. Do you understand that?

*The Defendant*: I understand.

*The Court*: All right. And that the Court is going to hold you both to an understanding of the law, as well as, court procedure? Do you understand that—?

*The Defendant*: Yes—

*The Court*: —as I would hold the prosecution in this case? Do you understand that?

*The Defendant*: Yes.

*The Court*: All right. There has been an indication that—I guess, discovery—I want to make sure—And that—You know—Requests that you need to make, either regarding the filing of a motion, requests for evidence, and those kinds of things can be a bit difficult for you. Do you understand that, sir? At least, in terms of getting the information, either promptly to the Court of over to the Prosecutor's Office? Do you understand that? And that there are some perils in terms of doing that to making sure that things are filed timely?

*The Defendant*: Yes.

Defendant interrupted the judge during the waiver colloquy to challenge the court's subject matter jurisdiction in the case:

*The Defendant*: —Subject Matter Jurisdiction [sic] can be brought up at any time and phase [sic] during the trial or hearings—

*The Court*: All right—

*The Defendant*: —I'm bringing this up now and I want it ruled on.

*The Court*: Okay. Sir, I'm going to get to that—

*The Defendant*: This is—

*The Court*: —I'm going to get to it. But, I got to do—

*The Defendant*: So, why do you keep telling me about something that's insignificant and—

*The Court*: Now, sir—

*The Defendant*: —I'm talking about Subject Matter Jurisdiction.

-13-

*The Court*: Sir—Sir?  It's not insignificant.  You may think it's insignificant, but in terms of the protection of your rights—

*The Defendant*: Huh huh?

*The Court*: —I do not consider it insignificant in the least.

*The Defendant*: Okay.  Can you tell me this?  Did you make an oath of office to uphold the Constitution?

*The Court*: Sir, yes, I did.

*The Defendant*: Well, my constitutional rights are being violated and I put it down in my motion.[4]  And it's all constitutional.

*The Court*: All right.  Sir—

*The Defendant*: And you took an oath to uphold the Constitution.  And I would—

*The Court*: And sir, by—

*The Defendant*: —I'd expect for you to rule on that.

*The Court*: —Sir, by my asking you questions, that is my sole intent to uphold the Constitution to make sure that all of your rights are protected, whether you want me to or not.

And so, we're going to get through my questions, so that your rights are protected and so that you understand where we are proceeding.  I have to do that.  That is part of my oath.  That is part of the Constitution.  And so, it would go a lot smoother if you would just answer my questions so, that ultimately, in terms of your motion; in terms of your communication to the Court that we can get to those issues.  But, I have to go through, procedurally, these steps, first.

Sir, do you have any questions, whatsoever, with reference to you representing yourself—

*The Defendant*: No—

*The Court*: —before the Court?  Thank you.

---

[4] This appears to be a reference to defendant's motion to dismiss for lack of subject matter jurisdiction.

-14-

What the Court is going to do based upon the Court's inquiry of the Defendant in this—The Court is going to permit the Defendant to represent himself. I will appoint the Public Defender's Office to act as standby counsel to assist in the filing of documents, so that there is not delay. And, also, to assist with any procedural questions that the Defendant—Procedural or substantive questions that the Defendant may have.

Defendant had also previously interrupted the judge during the course of the waiver colloquy to argue that the bank robbery statute was not a valid law because it had not been properly enacted under the Michigan Constitution.

We conclude that the colloquy that the judge conducted with defendant in this case adequately apprised defendant of the dangers and disadvantages of self-representation. The record reflects that defendant was clearly determined to represent himself and was impatient to move forward with the proceedings. The purpose of both the *Anderson* requirements and MCR 6.005 is "to inform the defendant of the risks of self-representation" before the defendant waives the right to counsel. *Adkins*, 452 Mich at 722-723. That is exactly what the district court judge did in the instant case. Moreover, the *Adkins* Court further explained that "[t]he *Anderson* and court rule requirements are merely vehicles to ensure that the defendant knowingly and intelligently waived counsel with eyes open" and that a "particular court's method of inquiring into and satisfying these concepts is decidedly up to it, as long as the concepts in these requirements are covered." *Id*. at 725. The judge in the instant case patiently explained the dangers of self-representation and was clearly cognizant of the importance of protecting defendant's constitutional rights. It is difficult to imagine how defendant's waiver of his right to counsel could be considered anything but knowingly, intelligently, and voluntarily made, given that the record clearly demonstrates that defendant was made aware of the risk he faced in representing himself and that he asserted this right with his eyes open. *Faretta*, 422 US at 835; *Anderson*, 398 Mich at 368. "[T]he effectiveness of an attempted waiver does not depend on what the court says, but rather, what the defendant understands." *Adkins*, 452 Mich at 723. Indeed, to have denied defendant's unequivocal and persistent request to represent himself would have been to improperly "forc[e] a lawyer upon an unwilling defendant," which is an action that the United States Supreme Court has held to violate a defendant's constitutional right to conduct his own defense. *Faretta*, 422 US at 817-820, 836.[5]

Furthermore, we conclude that the record establishes that the district court judge clearly did not believe that defendant's self-representation would disrupt or unduly burden the court, since the judge granted defendant's request and appointed standby counsel to assist defendant with procedural matters and defendant's questions. *Anderson*, 398 Mich at 368.

---

[5] We acknowledge that the right to self-representation is not absolute. *Indiana v Edwards*, 554 US 164, 171; 128 S Ct 2379; 171 L Ed 2d 345 (2008). However, for the reasons explained in this opinion, we conclude that defendant made a knowing, intelligent, and voluntary waiver of his right to counsel under the circumstances in this case.

Therefore, although the judge neglected to expressly announce findings on each of the *Anderson* prongs, we conclude that the judge nonetheless substantially complied with the requirements of *Anderson* and MCR 6.005 by sufficiently conveying the substance of these requirements to defendant and honoring defendant's unequivocal and informed intention to relinquish his right to counsel. *Adkins*, 452 Mich at 736. The judge's oversight, in the midst of defendant's persistent assertion of nonsensical arguments during the course of the waiver colloquy, is not sufficient to constitute plain error requiring reversal. *Id*. at 735; see also *Campbell*, 316 Mich App at 286-288 (holding that it was not plain error requiring reversal where the trial court failed to explicitly state on the record that a defendant's waiver of the right to counsel was unequivocal, knowing, and voluntary after engaging in the colloquy with the defendant to inform him of the risks of self-representation). Finally, because defendant validly waived his right to counsel, he was not deprived of this right and there was accordingly no structural error.

## B. DEFENDANT'S RIGHT TO BE PRESENT DURING THE NOVEMBER 12, 2015 PROCEEDINGS

Next, defendant argues that the arraignments on the informations were not held in conformity with MCR 6.113(B) because the charges against him were not read to him and he did not receive a copy of the informations. Defendant appears to further argue in connection with this argument that the district court erred in conducting the arraignments on the informations because defendant was not represented by counsel at the November 12, 2015 proceedings despite having had standby counsel at previous proceedings, that no waiver of his right to counsel for the arraignments was taken by the district court, and that there was a violation of his constitutional right to be present during the arraignments on the informations. Defendant additionally argues in his Standard 4 brief that he was denied his right to be present at both the second preliminary examination and second arraignment on the information because these were part of a separate case, that the lack of an arraignment on the information requires reversal of his conviction, and that he was denied his right to counsel by being deprived of standby counsel at the November 12, 2015 proceedings.

As an initial matter, defendant was not deprived of his right to counsel during any portion of the November 12, 2015 proceeding for the same reasons that we have already discussed regarding defendant's waiver of his right to counsel. Defendant had already waived his right to counsel at an earlier proceeding and did not have to waive this right a second time. Furthermore, in addition to there being no requirement to appoint standby counsel for a defendant exercising the right to self-representation, defendant's appellate argument that he was wrongfully deprived of standby counsel ignores the fact that he expressly rejected the continued participation of standby counsel at the November 5, 2015 hearing (before the preliminary examinations and arraignments on the informations occurred) and that the judge granted defendant's request to dismiss standby counsel. Therefore, these arguments are without merit.

Moving to defendant's other arguments that he was denied his constitutional right to be present during portions of the November 12, 2015 proceedings and that the arraignments were not conducted in accordance with MCR 6.113(B), defendant failed to raise these arguments below. Accordingly, they are unpreserved. *People v Metamora Water Serv, Inc*, 276 Mich App

376, 382; 741 NW2d 61 (2007). We review unpreserved claims of nonconstitutional and constitutional error for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

The Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees "the accused's right to be present in the courtroom at every stage of his trial." *Illinois v Allen*, 397 US 337, 338; 90 S Ct 1057; 25 L Ed 2d 353 (1970).[6] The right to be present is also "protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v Gagnon*, 470 US 522, 526; 105 S Ct 1482; 84 L Ed 2d 486 (1985). The United States Supreme Court has also described the right to be present as a right that belongs to a defendant in a felony prosecution "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v Massachusetts*, 291 US 97, 105-106; 54 S Ct 330; 78 L Ed 674 (1934), overruled in part on other grounds by *Malloy v Hogan*, 378 US 1, 2 n 1, 3; 84 S Ct 1489; 12 L Ed 2d 653 (1964); see also *Faretta*, 422 US at 816 (explaining that "the Confrontation Clause of the Sixth Amendment gives the accused a right to be present at all stages of the proceedings where fundamental fairness might be thwarted by his absence").

The right to be present is also protected by the analogous provisions of the Michigan Constitution. *People v Mallory*, 421 Mich 229, 246 n 10; 365 NW2d 673 (1984).[7] Accordingly, "[a] defendant has a right to be present during the voir dire, selection of and subsequent challenges to the jury, presentation of evidence, summation of counsel, instructions to the jury, rendition of the verdict, imposition of sentence, and any other stage of trial where the defendant's substantial rights might be adversely affected." *Id*. at 247. A defendant may waive the right to be present at a court proceeding through voluntary absence or disorderly behavior that requires the defendant to be removed from the courtroom. *People v Buie*, 298 Mich App 50, 57; 825 NW2d 361 (2012). Waiver is "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted).

"An accused does not have a constitutional right to a preliminary examination, a procedure established by the Legislature, MC. 766.1 *et seq.*, and recognized by court rule, MCR 6.110(A)." *People v McGee*, 258 Mich App 683, 695; 672 NW2d 191 (2003). "The magistrate's bindover to the circuit court, after a preliminary examination or a defendant's waiver of an examination, authorizes the prosecutor to file an information." *Id*. "Although a preliminary examination may assist in fulfilling the constitutional requirement that the accused be informed of the nature of the charge, the primary function of a preliminary examination is to determine if a crime has been committed and, if so, if there is probable cause to believe that the defendant committed it." *Id*. at 696 (quotation marks and citations omitted).

---

[6] See also US Const, Ams VI and XIV.

[7] See also Const 1963, art 1, §§ 17 and 20.

"The purpose of an arraignment is to provide formal notice of the charge against the accused." *People v Nix*, 301 Mich App 195, 208; 836 NW2d 224 (2013) (quotation marks and citation omitted). "Another purpose of the arraignment is to allow the defendant to enter a plea on the charges." *Id*. "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence." *People v Darden*, 230 Mich App 597, 600; 585 NW2d 27 (1998) (quotation marks and citation omitted). The procedure for the arraignment on the information is set forth in MCR 6.113(B), which provides as follows:

> (B) Arraignment Procedure. The prosecutor must give a copy of the information to the defendant before the defendant is asked to plead. Unless waived by the defendant, the court must either state to the defendant the substance of the charge contained in the information or require the information to be read to the defendant. If the defendant has waived legal representation, the court must advise the defendant of the pleading options. If the defendant offers a plea other than not guilty, the court must proceed in accordance with the rules in subchapter 6.300. Otherwise, the court must enter a plea of not guilty on the record. A verbatim record must be made of the arraignment.

The circuit court arraignment, also called the arraignment on the information, may be conducted by a district court judge immediately following bindover. MCR 6.111.

Our Supreme Court has held that "the presence of defendant in court through a trial of the cause upon the merits represented by counsel, who failed to call attention to the omission of arraignment and plea, was a waiver of his right thereto." *People v Weeks*, 165 Mich 362, 364; 130 NW 697 (1911). The *Weeks* Court also indicated that a failure to arraign is a defect that is "merely technical, affecting no substantial right whatever" and that "[w]here the prisoner appears with his own counsel, the omission formally to arraign and ask for a plea is immaterial to his rights and may be deemed to be waived." *Id*. at 365 (quotation marks and citation omitted). More recently, this Court has stated that "[a] showing of prejudice is required to merit relief for the failure to hold a circuit court arraignment." *Nix*, 301 Mich App at 208, citing MCR 6.113(A).

In this case, during the course of defendant's argumentative behavior toward the district court judge at the beginning of the first preliminary examination on November 12, 2015, the judge informed defendant multiple times that he could remain in the courtroom but had to behave appropriately. The judge also informed defendant multiple times that he would forfeit his right to be present in the courtroom if he left the courtroom or chose to continue disrupting the proceedings to the point that it was necessary to remove him. Furthermore, the judge clearly indicated that the hearing would continue in defendant's absence if defendant forfeited his right to be present, and the judge gave defendant numerous opportunities to reform his conduct and remain in the courtroom. Finally, the judge asked defendant how he wanted to proceed, and defendant responded,

> Okay. I—I believe I'm ready to go. And you—You all can conduct this hearing without me.

After continuing with the preliminary examination and determining that defendant would be bound over to the circuit court, the district court judge attempted to arraign defendant on the information, pursuant to MCR 6.111. The record reflects that the judge asked for the defendant to be returned to the courtroom for the arraignment and for an inquiry to be made of defendant regarding his desire to be present for that proceeding. An MDOC officer informed the judge on the record that defendant refused to return to the courtroom and that the officer would potentially have to physically fight defendant in order to force his return to the courtroom. The district court judge found that defendant posed a potential security risk and voluntarily rejected his opportunity to participate in the arraignment proceedings. Defendant was subsequently given another opportunity to return to the courtroom before the district court moved on to the preliminary examination for the second charge. Defendant again refused this opportunity. The judge bound defendant over on this charge as well and found that defendant's conduct during the course of the proceedings constituted a voluntary refusal to participate in the second arraignment as well. A plea standing defendant mute was entered for both charges.

We conclude that defendant's conduct at the November 12, 2015 proceedings constituted a waiver of his right to participate in the remainder of the proceedings that day, including both preliminary examinations and circuit court arraignments, because he intentionally and voluntarily chose to leave the courtroom and refused to return despite being given two opportunities and being fully aware of the nature of the proceedings and that the proceedings would continue without him. *Carter*, 462 Mich at 215; *Buie*, 298 Mich App at 57. "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Carter*, 462 Mich at 215 (quotation marks and citation omitted).

Moreover, defendant cannot establish error requiring reversal based on his lack of a formal arraignment proceeding for either underlying bank robbery charge because he was not prejudiced. Defendant was informed on the record of the charges against him on multiple occasions, he does not claim to have raised any objection in the lower court based on any alleged lack of a circuit court arraignment, and he was convicted of both bank robbery offenses after a trial on the merits for which he was present. Although he was not formally represented by counsel at the trial, his lack of counsel was due to his own valid waiver of the right to counsel and assertion of right to self-representation. We also note that defendant had court-appointed standby counsel during his trial. Under these circumstances, defendant has failed to show prejudice, and any claim of error based on the circuit court arraignment proceedings is deemed waived. *Weeks*, 165 Mich at 364-365; *Nix*, 301 Mich App at 208.

## C. WAIVER OF JURY TRIAL

Next, defendant argues that the trial court failed to comply with MCR 6.402(B) in accepting defendant's waiver of his constitutional right to a jury trial. Defendant argues that his waiver was not voluntary because he repeatedly informed the trial court that he was being "forced" to waive his right to a jury trial.

"The adequacy of a jury trial waiver is a mixed question of fact and law." *People v Cook*, 285 Mich App 420, 422; 776 NW2d 164 (2009). Because defendant failed to raise this issue below, it is unpreserved. *Metamora Water Serv, Inc*, 276 Mich App at 382. We review

unpreserved claims of constitutional error for plain error affecting substantial rights. *Carines*, 460 Mich at 764.

This Court has previously set forth the applicable legal principles regarding a jury trial waiver:

> A criminal defendant has a constitutionally guaranteed right to a jury determination that he is guilty beyond a reasonable doubt. However, with the consent of the prosecutor and the approval of the trial court, a defendant may waive his right to a jury trial. In order for a jury trial waiver to be valid, however, it must be both knowingly and voluntarily made.
>
> By complying with the requirements of MCR 6.402(B), a trial court ensures that a defendant's waiver is knowing and voluntary. [*Cook*, 285 Mich App at 422 (citations omitted).]

Pursuant to MCR 6.402(B),

> Before accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury. The court must also ascertain, by addressing the defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court. A verbatim record must be made of the waiver proceeding.

As this Court has explained regarding MCR 6.402(B):

> The language of the rule is clear. Before accepting a waiver, a trial court must advise the defendant in open court of the constitutional right to trial by a jury and the court must ascertain, by addressing the defendant personally, that the defendant understands the right and voluntarily chooses to give up that right and to be tried by the court. [*People v Mosly*, 259 Mich App 90, 93; 672 NW2d 897 (2003).]

In this case, on the first day of trial and before the voir dire process had begun, defendant made an unequivocal request for a bench trial. The trial court then addressed defendant personally, under oath, and in open court. The trial court advised defendant of his constitutional right to a jury, and defendant affirmatively indicated that he understood this right. The trial court explained that the matter would proceed to a bench trial if defendant gave up his right to a jury, advised defendant of the potential penalties if convicted of the charged offenses, and gave defendant the opportunity to consult with appointed standby counsel. Defendant also confirmed his desire to represent himself. Defendant responded affirmatively when the trial court asked if he was voluntarily giving up his constitutional right to a jury trial in order to proceed to a bench trial. The trial court's colloquy clearly satisfied the requirements of MCR 6.402(B), and the record supports the conclusion that defendant knowingly and voluntarily waived his right to a jury trial. *Cook*, 285 Mich App at 422. Defendant's subjective reasons for choosing to proceed with a bench trial, which were based on nothing more than speculative assumptions and his disagreement with various pretrial rulings, are completely irrelevant because there is absolutely no indication on the record that defendant's waiver was not the product of his own free will. The

trial court carefully conducted the waiver colloquy and gave defendant the opportunity to choose whether he wanted to proceed with a jury trial or bench trial. Accordingly, defendant has failed to demonstrate plain error requiring reversal. *Carines*, 460 Mich at 763.

## D. VALIDITY OF THE ARREST WARRANTS

Next, defendant argues that the warrants in both of the underlying cases were invalid because they were not supported by probable cause, were not properly sworn to, and were not supported by affidavits. Defendant further argues that a proper record was not made of the "swear-tos" that occurred on July 11, 2015 and October 1, 2015, and that the oral testimony relied on by the magistrate to issue the warrants was therefore not adequately preserved to permit review. Defendant appears to argue that the trial court did not have "jurisdiction"[8] to conduct the proceedings that occurred below.

> Whether a complaint adequately supports the issuance of an arrest warrant raises a federal question under the Fourth Amendment as applied to the states through the Fourteenth Amendment. However, whether the judicial phase of a prosecution is properly initiated by a complaint infirm under Fourth Amendment standards is primarily a question of Michigan law. [*People v Burrill*, 391 Mich 124, 128; 214 NW2d 823 (1974).]

In this case, defendant's appellate argument is entirely without merit because even if the arrest warrants were somehow legally deficient, he would not be entitled to reversal of his convictions. As our Supreme Court has explained:

> [C]ontrary to [the defendant's] contentions, the invalidity of the arrest warrant did not oust the circuit court of jurisdiction. The sole sanction imposed by the United States Supreme Court for the invalidity of an arrest warrant has been the suppression of evidence obtained from the person following his illegal arrest.

> The Court has consistently held that a court's jurisdiction to try an accused person cannot be challenged on the ground that physical custody of the accused was obtained in an unlawful manner. In *Frisbie v Collins*, 342 US 519, 522; 72 S Ct 509; 96 L Ed 541 (1952), the Court declared:

>> This Court has never departed from the rule announced in *Ker v Illinois*, 119 US 436, 444; [7 S Ct 225; 30 L Ed 421 1886,] that the power of a court to try a person for crime is not impaired by the fact that he has been brought within the court's jurisdiction by reason of a "forcible abduction." No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one

---

[8] Defendant does not specify on appeal whether he is referring to personal jurisdiction or subject matter jurisdiction.

present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

On the rationale of *Frisbie v Collins* and the authority of the long line of cases preceding and including *France*[9] and *Mosley*,[10] we conclude that the invalidity of the arrest warrant in this case did not affect the court's jurisdiction to try [the defendant]. [*Burrill*, 391 Mich at 133-134.]

In this case, defendant was convicted after a trial on the merits, for which he was present. He had previously been made aware of the charges against him on numerous occasions throughout the district court and circuit court proceedings. Defendant does not claim that there was any evidence obtained from him as a result of his arrest, and the suppression remedy is therefore inapplicable. Regardless of the legal sufficiency of the arrest warrants in this case, the trial court was not somehow deprived of subject matter jurisdiction or personal jurisdiction such that defendant's convictions could be considered invalid. *Id*. Defendant is not entitled to reversal of his convictions on this ground.

## E. RIGHT TO COUNSEL AT INITIAL ARRAIGNMENT ON THE WARRANT

Finally, defendant argues in his Standard 4 brief that he was unconstitutionally prevented from invoking his right to counsel or voicing his objections to the proceedings at his initial arraignment on the warrant that occurred on September 9, 2015. Defendant argues that the initial arraignment on the warrant was a critical stage during which he was entitled to be represented by counsel because the legal or factual basis for the arrest warrant was unknown. Though much of his argument is nonsensical, from what we can glean, it appears defendant argues that he was unable to challenge the legality of the complaint and arrest warrant because he was not represented by counsel at the September 9, 2015 arraignment on the warrant.

As previously noted, an accused facing incarceration has a right to counsel "at all critical stages of the criminal process," which is protected by the Sixth Amendment. *Williams*, 470 Mich at 641. A critical stage of the criminal proceedings is one " 'where the results might well settle the accused's fate and reduce the trial itself to a mere formality.' " *Moulton*, 474 US at 170; 106 S Ct 477, 484; 88 L Ed 2d 481 (1985) (citation omitted); see also *Hamilton*, 368 US at 53-54 (explaining that a critical stage of a criminal proceeding is one where certain rights and available defenses will be "irretrievably lost" if not asserted at that time); *Buie*, 298 Mich App at 61 ("This right to counsel extends to all critical stages of the proceedings where counsel's absence might harm defendant's right to a fair trial.") (quotation marks and citation omitted).

---

[9] *People v France*, 370 Mich 156; 121 NW2d 476 (1963).

[10] *People v Mosley*, 338 Mich 559; 61 NW2d 785 (1953).

The right to counsel attaches once a prosecution is "commenced," which occurs at "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v Gillespie Co, Texas*, 554 US 191, 198; 128 S Ct 2578; 171 L Ed 2d 366 (2008) (quotation marks and citations omitted). However, the *Rothgery* Court also explained that "[t]he question whether arraignment signals the initiation of adversary judicial proceedings . . . is distinct from the question whether the arraignment itself is a critical stage requiring the presence of counsel." *Id*. at 212 (quotation marks and citation omitted; alterations and ellipsis in original). Accordingly,

> Once attachment occurs, the accused at least is entitled to the presence of appointed counsel during any "critical stage" of the postattachment proceedings; what makes a stage critical is what shows the need for counsel's presence. Thus, *counsel must be appointed within a reasonable time after attachment* to allow for adequate representation at any critical stage before trial, as well as at trial itself. [*Id*. (emphasis added).]

In this case, defendant's argument is factually inaccurate. At the September 9, 2015 arraignment, defendant invoked his right to counsel and was informed by the magistrate that counsel would be appointed for him. His objections to the warrant and complaint were noted for the record, and there was nothing about the proceeding that prevented him from subsequently raising more completely argued objections to the legality of the warrant or complaint. Counsel was appointed for defendant, but he subsequently asserted his right to self-representation and waived his right to counsel. Then he asked that his standby counsel be dismissed. In sum, defendant has not demonstrated that any of his rights or defenses were irretrievably lost, or that his trial was rendered fundamentally unfair, as a result of not having counsel present at the initial arraignment on the warrant; this proceeding was therefore not a "critical stage" where the absence of counsel could constitute a violation of defendant's right to counsel. *Moulton*, 474 US at 170; *Hamilton*, 368 US at 53-54; *Buie*, 298 Mich App at 61.

Affirmed.

/s/ Thomas C. Cameron
/s/ Patrick M. Meter
/s/ Stephen L. Borrello